IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIELLE MICHELE VAUGHNS,        §
                                 §
            Plaintiff,           §
                                 §
V.                               §        No. 3:23-cv-1893-X-BN
                                 §
STATE OF TEXAS, ET AL.,          §
                                 §
            Defendants.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Danielle Michele Vaughns filed a *pro se* complaint against the State of Texas, the Dallas Housing Authority ("DHA"), a justice of the peace, and several Texas municipalities and/or their law enforcement departments, seeking $5 million in damages based on allegations of negligence, conspiracy, and (possibly) violations of the United States Constitution. *See* Dkt. No. 4. And, considering documents attached to the complaint, Vaughns's claims appear to be related to an eviction and/or state court proceedings related to that eviction. *See id*.

United States District Judge Brantley Starr referred the complaint to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court previously granted Vaughns's motion for leave to proceed *in forma pauperis* (IFP), *see* Dkt. Nos. 5 & 6, subjecting the complaint to screening under 28 U.S.C. § 1915(e)(2).

And the undersigned now enters these findings of fact, conclusions of law, and

recommendation that, to the extent and for the reasons set out below, the Court should dismiss the complaint.

## Legal Standards

Section 1915(e)(2) authorizes the Court to dismiss a complaint filed IFP if it "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii). The same statute also authorizes the Court to dismiss such a complaint if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). And "[t]he language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). So the pleading requirements as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to the Court's screening of the claims set out in a complaint filed IFP.

Considering these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

But, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

So, to avoid dismissal under Section 1915(e)(2)(B)(ii), plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

And, under these standards, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## Analysis

Some of Vaughns's claims implicate the Court's jurisdiction, its "power to say what the law is." *United States v. Willis*, ___ F.4th ____, No. 22-10384, 2023 WL 5013686, at *10 (5th Cir. Aug. 7, 2023). So the undersigned must begin there.

**I.    *Younger* abstention and/or the *Rooker-Feldman* doctrine may apply and prevent the Court's consideration of at least some of the claims.**

First, Vaughns attaches to the complaint multiple filings from state court proceedings, including a June 16, 2023 writ of possession issued by a Dallas County justice of the peace and a May 23, 2023 eviction citation from the same court. *See* Dkt. No. 4 at 5-37. And, if Vaughns's claims in this federal proceeding implicate ongoing state court proceedings, the Court should abstain from exercising its jurisdiction over those claims under *Younger v. Harris*, 401 U.S. 37 (1971), which, "following *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987), [ ] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government,'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008).

42 U.S.C. § 1983 "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'" *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); citing *Younger*, 401 U.S. at 43-47).

And, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state

proceedings. *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)); internal quotation marks omitted).

The doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); internal citations omitted); *accord Hood*, 822 F.3d at 222-23.

Of the three exceptional categories identified in *NOPSI*, which "define *Younger*'s scope," *Sprint*, 571 U.S. at 78, the unique posture of this litigation – filed to request that a federal district court direct how a state court should conduct a pending proceeding – fits within the third, *see Pennzoil Co.*, 481 U.S. at 13-14 ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),] and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only

would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("[B]oth *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings."))).

And the additional *Middlesex County* factors are present here: "In this case, the state proceedings are judicial in nature and represent important state interests, as state courts must be empowered to enforce their own orders and judgments. Moreover, [Vaughns] has had opportunities to raise [any] federal challenges in these state proceedings and there has been no procedural bar to his doing so." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 949 (11th Cir. 2015) (per curiam); *see also Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate

unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at 425; emphasis in original)).

And, insofar as state judicial proceedings have concluded, such that no appeal was pending when Vaughns filed this lawsuit, this federal district court lacks jurisdiction "to modify or reverse" a state proceeding under the *Rooker-Feldman* doctrine. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) ("'Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments' except when authorized by Congress." (quoting *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004))); *accord Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994); *see also Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) (noting that the doctrine prevents "thinly veiled attempt[s] to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court [judgment] and other related orders"); *but see also Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) ("*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed.").

## II. Sovereign immunity bars subject matter jurisdiction over claims against the State of Texas.

If neither *Younger* nor *Rooker-Feldman* applies to Vaughns's claims in federal court, the Court still lacks jurisdiction over any claims that Vaughns now asserts against the State of Texas because, "[i]n most cases, Eleventh Amendment sovereign

immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citations omitted). And Vaughns fails to show that an applicable exception applies to the claims alleged in the complaint, such as waiver or the exception allowed by *Ex parte Young*, 209 U.S. 123 (1908).

The Court therefore lacks subject matter jurisdiction over the claims against the State of Texas. *See Stramaski v. Lawley*, 44 F.4th 318, 321-22 (5th Cir. 2022) ("Absent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 374, 276 (5th Cir. 2020))); *see also NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) ("'Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.' Texas has not consented by statute, and § 1983," for example, "does not abrogate state sovereign immunity." (citations omitted)).

## III.    Immunity also bars the claims against the justice of the peace.

Vaughns's claims are not easy to decipher – particularly as to any claims made against a justice of the peace, presumably the judge presiding over the eviction proceeding.

But Vaughns alleges no facts to show that an act by the judge fell outside a normal judicial function or was undertaken without jurisdiction. So any claims asserted against the justice of the peace named as a defendant are barred by either judicial immunity, insofar as Vaughns sues the judge in an individual capacity,

*Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009), or by the Eleventh Amendment, as "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity," *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citation omitted).

## IV.    Vaughns has not alleged a plausible claim against the DHA.

Against the DHA, Vaughns alleges that the defendant "began [a] conspiracy to cause physical, emotional, and financial harm" to her by "fail[ing] to clarify paperwork and documents signed by [the] landlord," which Vaughns contends led the landlord "to believe [she] had no legal right to property" and "to falsely put [her] out while not at home." Dkt. No. 4 at 2.

The Court cannot reasonably infer from these conclusions that the DHA is liable for the harm to Vaughns that was allegedly caused by the landlord. That is, all that Vaughns alleges is that the DHA "failed to clarify paperwork and documents" and, because of that, the landlord wrongfully evicted Vaughns.

These allegations fail to include enough factual detail to cross the line from possible to plausible. For example, and maybe most critically, what content lacked clarification such that this shortcoming led to the harm that Vaughns alleges?

## V.    Vaughns's claims related to Kaufman County, its sheriff, Brazoria County, and/or the Pearland police department are also not plausibly alleged.

First, concerning the allegations against three municipalities that Vaughns identifies – Kaufman County, Texas, Pearland, Texas, and Brazoria County, Texas – it is unclear whether Vaughns brings claims against a county sheriff's office or a

police department.

But, if that is the case, a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) ("[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.").

And Texas sheriff's departments and police departments are commonly dismissed as non-jural entities. *See, e.g.*, *Combs v. City of Dall.*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)); *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (relying on *Darby* on hold that "the Dallas County Sheriff's Office" and the Dallas County jail "are non-jural entities under § 1983" (collecting cases)).

Turning to any claims that Vaughns may make directly against the Texas municipalities identified in the complaint, the Court should liberally construe Vaughns's complaint as alleging state law claims, *see* Dkt. No. 4 at 38, and that the municipalities violated Vaughns's right protected by the United States Constitution, *see id.* at 2-3.

Starting with the constitutional claims, "[a] person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

> A plaintiff may proceed on a *Monell* claim only by
>
> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (en banc))).

"To proceed beyond the pleading stage, a complaint's 'description of a policy or

custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

But, almost without exception, allegations "limited to the events surrounding the plaintiffs" cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *see, e.g.*, *id.* at 628 ("Here, the plaintiffs allege there was a retaliatory campaign against them and a retaliatory investigation against the grand jury and its prosecutors, all arising from the same predicate events. The retaliatory campaign against them was publicly known, but they offered no evidence that similar retaliation had victimized others. There was, in other words, no allegation of a 'widespread practice' of retaliation that is 'so common and well settled' as to constitute the policy of Harris County." (quoting *Webster*, 735 F.2d at 853)).

Because the allegations in the complaint are limited to events surrounding Vaughns and do not otherwise describe – with specific facts – a policy or custom and its relationship to the violations that Vaughns asserts, Vaughns has not alleged a policy as required to plausibly plead the liability of a municipality named in the complaint.

Taking up next the state law claims alleged against the Texas municipalities identified in the complaint, as to these claims, the Court must again consider whether there is subject matter jurisdiction, as "[s]overeign immunity protects Texas and its political subdivisions – including municipalities … – from suits for money damages." *St. Marion Props., L.L.C. v. City of Hous.*, ___ F.4th ____, No. 22-20019, 2023 WL 5346633, at *5 (5th Cir. Aug. 21, 2023) (citing *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016)). And "[s]overeign immunity is jurisdictional." *Id.* (quoting *Cozzo v. Tangipahoa Par. Council – President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002)).

Against no defendant in particular, Vaughns makes a conclusory assertion of "negligence" but also describes that cause of action as "conspiracy to cause harm in the form of emotional, physical, financial." Dkt. No. 4 at 38. Vaughns then alleges facts to support intentional torts against the municipalities identified – that, among other things, they "wrongfully charged"; "defamed"; "conspire[d] to trap"; and "conspired to defame" Vaughns. *Id.* at 2-3.

The nonconclusory assertions therefore support torts that are classified as intentional under Texas law. *See, e.g.*, *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996) (civil conspiracy); *Mathis v. City of Dall.*, No. 3:20-cv-655-M-BH, 2020 WL 8172748, at *4 (N.D. Tex. Dec. 30, 2020) (defamation), *rec. accepted*, 2021 WL 135990 (N.D. Tex. Jan. 14, 2021).

But the Texas Torts Claims Act ("TTCA") "render[s] municipalities within Texas immune from liability for all intentional torts," *Johnson v. City of Dall., Tex.*,

No. 3:99-cv-2153-D, 2001 WL 332021, *3 (N.D. Tex. Apr. 3, 2001), as the "TTCA's limited waiver of sovereign immunity does not apply to [an] intentional tort," *Mathis*, 2020 WL 8172748, at *4; *see also Webb v. City of Dall., Tex.*, 314 F.3d 787, 792 (5th Cir. 2002) ("[U]nder Texas law, a suit against a municipality or its agencies arising out of the performance of its governmental duties … is deemed to be a suit against the State of Texas for purposes of state sovereign immunity unless some special exception applies." (footnote omitted)); *St. Marion Props.*, 2023 WL 5346633, at *7 ("'In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.' And 'a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.'" (quoting *DART v. Whitley*, 104 S.W.3d 540, 541 (Tex. 2003), then TEX. GOV'T CODE § 311.034)).

Finally, Vaughns makes allegations that the Kaufman County Sheriff and/or his deputy defamed her. But, even if the Court liberally construes these claims as alleging more than that the Sheriff should be held liable for the acts of his subordinates, such that Vaughns is alleging a defamation claim against an individual and that the *Monell* pleading requirements discussed above do not apply, *see Isaac v. Glennis*, 32 F.3d 566, 1994 WL 442429, at *2 (5th Cir. July 29, 1994) (noting that the limitations applicable to alleging municipal liability "also apply when a sheriff or similar official is sought to be held liable for acts of his subordinates" (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987))), Vaughns still has not alleged a plausible defamation claim under Texas law.

To maintain a valid claim of defamation under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice, if plaintiff is considered a public official or public figure, or negligence, if plaintiff is a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see generally N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).

A plaintiff may avoid dismissal of a defamation claim by presenting clear and specific evidence as to each element. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "Clear and specific evidence means that the plaintiff 'must provide enough detail to show the factual basis for its claim.'" *Id.* (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)).

Vaughns's sparse allegations lack enough detail to plausibly allege each required element of a defamation claim under Texas law – in particular, the words alleged to be defamatory.

The threshold question in a case alleging defamation is "whether the words used 'are reasonably capable of a defamatory meaning.'" *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (citing *Musser v. Smith Prot. Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). A statement is (1) defamatory when it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation," TEX. CIV. PRAC. & REM. CODE ANN. § 73.001, and (2) "defamatory per

se when it is 'so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed,'" *Tatum*, 554 S.W.3d at 638 (citations omitted). And, unless a statement is verifiably false, it is not defamatory regardless of whether it is in oral or written form. *See id.* at 624.

### Leave to Amend

The time to file objections to the recommendation that the complaint be dismissed (further explained below) allows Vaughns an opportunity to cure the deficiencies identified above (that is, to provide enough facts to plausibly allege a claim over which the Court has jurisdiction) and thus show the Court that this case should not be dismissed at this time and that the Court should instead grant Vaughns leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002).").

And, if Vaughns fails to show that leave to amend should be granted, the Court should dismiss the complaint (without prejudice as to the claims over which the Court lacks jurisdiction but with prejudice as to the claims over which there is subject matter jurisdiction).

- 16 -

**Recommendation**

Unless, within the time to file objections, Plaintiff Danielle Michele Vaughns shows a basis to amend the complaint to allege a plausible claim over which the Court has jurisdiction, the Court should dismiss the complaint without prejudice as to the claims over which the Court lacks jurisdiction but with prejudice as to the claims over which there is subject matter jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE